Rosalie PRIDE, Plaintiff-Appellant,

v.

Maury LAMBERG and Sandro, Inc., a Corporation, Defendants-Respondents.

No. 49488.

Supreme Court of Missouri,

Division No. 2.

April 8, 1963.

442

George G. White and Richard E. Baker, Clayton, for appellant.

Sidney Rubin, St. Louis, for respondents.

BARRETT, Commissioner.

This is an action to recover $25,000 actual and $25,000 punitive damages for alleged malicious prosecution. At the close of the plaintiff's evidence the trial court sustained the defendants' motion for judgment and the plaintiff appeals from the ensuing judgment of dismissal.

It is necessary at the outset to make the observation that the appellant designates and presents her action as one for malicious prosecution, and the respondents, as well as the plaintiff, have indiscriminately cited both false imprisonment and malicious prosecution cases. Coffman v. Shell Petroleum Co., 228 Mo.App. 727, 728, 71 S. W.2d 97, 98. For the definitions and distinctions in the two actions in general see Annotations 21 A.L.R.2d 643, 647; 36 A.L. R.2d 786, 787–788; 34 Am.Jur., Malicious Prosecution, Secs. 2–3, pp. 703–704; 54 C.J.S. Malicious Prosecution § 1, p. 951; 22 Am.Jur., False Imprisonment, Secs. 2–3, pp. 353–354; 35 C.J.S. False Imprisonment § 4, p. 625. Confusing as the consequences may be, it is not the function of this court to carefully spell out an applicable theory and the appeal is accepted as it has been presented—as an action for malicious prosecution.

Sandro, Inc., in Overland, sold dresses, coats, sweaters and ladies' ready-to-wear. Maury Lamberg managed the store and may have been its principal stockholder. Regularly the store employed five salesladies, and during the Christmas season Maury's wife, brother-in-law, nephew and perhaps an extra saleslady or two were also engaged in various activities about the store. The plaintiff Rosalie Pride had been employed in the store on a part-time basis for about seven years. Her job was pressing dresses and skirts, and her work was done in the back room where mink stoles

and some of the better coats and dresses were stored. The washroom was in this area of the store and all the employees had access to it. On Saturday, December 19, 1959, Mr. Lamberg paid Rosalie and about 8 o'clock she left the store by way of the front door and proceeded to her home in Wellston. During the day two fur-trimmed sweaters were sold and about 8:15 it was discovered that they were missing from the back room. Sometime after 9 o'clock a police officer came to Rosalie's door and informed her, "You're wanted for larceny." The officer took her to the Ninth District police station, then to the Twelfth District, to the Overland Jail and finally to the courthouse in Clayton where, about 9 o'clock on Sunday, she was released. It is for this arrest, detention and confinement in jail that Rosalie prosecutes this action for alleged malicious prosecution. In addition to any other injury, Rosalie was humiliated indeed when "My husband's friend came and asked me what bird has wings and didn't fly."

■ The meritorious question here is whether from the direct and circumstantial evidence (Heinold v. Muntz T. V., Inc. (Mo.), 262 S.W.2d 32) the plaintiff "made a submissible * * * prima facie case" of malicious prosecution. Harper v. St. Joseph Lead Co., 361 Mo. 129, 135, 233 S.W. 2d 835, 837. In considering this problem the plaintiff's evidence most damaging to the defendants is set forth. Rosalie says that at the Overland Jail she "asked the police lady to call Mr. Lamberg for me." She was held for some time, however, and was first questioned by police officers and finally "the lieutenant called Mr. Lamberg and he came out." Lamberg was there about ten minutes and this, according to Rosalie, is the crux of what he had to say. "Mr. Lamberg came in and he was looking a real stranger and like he didn't know me or nothing. He came in and said, 'I know you got those. Couldn't nobody got those but you. You was the only one in the back room.' I said, 'Everybody goes in back.' He said I was the onliest one. 'Those

sweaters were already sold. You give those back to me and everything will be like it was. You won't lose your job or anything. Tell me where they are because they are already sold.' I said, 'I didn't get those sweaters.' He said, 'Joe wasn't there. You was the onliest one using the back room.'" Also in Rosalie's behalf, as "admissions against interest," these excerpts from Lamberg's deposition were read in evidence. He called the Overland police and asked them to come to the store. "Q. I asked you what did you say to the police when they arrived at the store? A. I told them that the sweaters were missing and I tried to reach all my employees, the two girls that were off and the rest of the girls were all in the store. He asked me if there was anybody else who wasn't there and I mentioned Rosalie Pride and I told him we tried to get Rosalie and went to the bus and couldn't find her there, and my son drove into Wellston to catch the bus when she got off. He drove all over Wellston without finding her there. * * * Q. When did you first learn that she had been arrested? A. When they called me up and told me she was in the Overland Police Station on Sunday afternoon. Q. Who called you? A. Sergeant Onions. He said he had Rosalie Pride there and would I come over."

Rosalie's other witness was Lt. Velker of the Overland Police Department. He said that in response to a call he and Sergeant Onions went to Sandro's and there received a report of the theft of two fur-trimmed sweaters. These officers interrogated several employees about the circumstances. The gist, he said, of his conversation with Lamberg was this: "Just that statements were made that he had these sweaters in the back room, they were hung up in the back room, and that after they checked after this lady left to go home, that the sweaters were missing." This is the police report, introduced in evidence through Lt. Velker:

"Received a call of larceny at Sandro Clothing Store, 2527 Woodson Road,

and upon arrival was informed by Maury Lamberg * * * that approximately 20 minutes prior to the arrival of this department, he had observed two sweaters missing from rack in store room located in the rear of the store.

"Lamberg further stated he employs a colored girl part time to press clothing. * * * Rosalie Pride was last seen sweeping the floor in store room, but not observed leaving. Subject did not leave through front door and only other exit is rear door of store room. Above placed on TT #202, 9:49 P.M., 12/19/59. No record in St. Louis County or City Police Departments.

"At approximately 12:15 P.M., 12/20/59 Officer Velker and Officer Hardesty, at the Central District, St. Louis Police Department, arrested one Rosalie Pride * * *. This arrest being made for suspicion of stealing over $50.00.

"Subject was conveyed to this department, booked and questioned in regard to above theft, Report #1121 cc, where she denied any knowledge of same. Subject stated she would be willing to take a polygraph test. * * *

"At approximately 6:30 P.M. 12/20/59, Maury Lamberg contacted this department stating he did not wish to follow through on prosecution. St. Louis County Sheriff's office contacted for the release of Rosalie Pride."

In conclusion, on cross-examination, Lt. Velker gave this evidence:

"Q. Did Mr. Lamberg at any time ever accuse Mrs. Pride of taking the sweaters?

"A. Directly say she·took them; no, sir, not to my knowledge. To me he did not.

"Q. Did not tell you. A. No, sir.

"Q. Did he at any time request her arrest? A. No, sir.

"Q. Now, subsequent to your investigation you went back with the sergeant to the station, I take it?

"A. That's right.

"Q. And the order to put this out, that was made at the station; am I not correct?

"A. That's right, sir.

"Q. Based on the investigation that you made?

"A. That's right, sir.

"Q. It was the decision of you and Sergeant Onions that this woman be picked up on this charge; is that correct?

"A. From the information we had received; yes, sir.

"Q. At no time did Mr. Lamberg either accuse directly or demand her arrest, is that correct? A. To me, no sir."

■ Here, unlike in La Chance v. National Pigments & Chemical Co. (Mo. App.), 104 S.W.2d 693, there was no formal charge before a magistrate or the filing of an information in any court charging Rosalie with a criminal offense. Nevertheless, there was an arrest and a detention in jail and it is assumed "that a prosecution was instituted and commenced against plaintiff." Coffman v. Shell Petroleum Co., supra. But she caused Maury to be called and when he came to the jail he did accuse her of stealing the sweaters, "I know you got those." But the only implied threat was the loss of her job, there was no threat of a prosecution and there is no evidence that he instigated or brought about her arrest. As for her arrest and detention there is no evidence that Maury went any further than to state the facts as he knew them to the officers. He expressed to Rosalie his opinion that she was guilty

of stealing the sweaters but there is no evidence that he made such a charge to the police or requested her arrest. According to the police, theirs was the decision, from their investigation, to arrest and detain her for "suspicion of stealing over $50.00." Maury did not ask anyone to prosecute Rosalie and after the arrest and detention informed the police, according to their report, "that he did not wish to follow through on prosecution." This statement in the context of the report is not subject to the interpretation that Maury caused or instigated the arrest, "in none of these actions did he direct the police to do anything." Checkeye v. John Bettendorf Market (Mo.App.), 257 S.W.2d 202, 204. There is no proof that Maury had any part in the decision to arrest Rosalie, there certainly is no evidence that he caused or instigated her detention and in the undisputed circumstances adduced by her there is no liability for malicious prosecution. Hunter v. Karchmer (Mo.App.), 285 S.W.2d 918; Harper v. St. Joseph Lead Co., supra, and the following false imprisonment cases, Snider v. Wimberly, 357 Mo. 491, 209 S.W.2d 239; Heinold v. Muntz T. V., Inc., supra; Checkeye v. John Bettendorf Market, supra.

After the court indicated that the defendants' motion for judgment would be sustained, the plaintiff made a request "to reopen her case for the purpose of producing additional testimony concerning the imprisonment of the plaintiff." Counsel stated that in addition to the evidence before the court Rosalie would testify that while a prisoner of the Overland police she was conveyed by Maury Lamberg in his personal automobile, together with a police officer "back to the scene of the alleged theft for the purpose of examining the premises to determine whether or not the alleged stolen items were still on the premises and could be found." In addition, it was stated, she would testify that after Maury searched the store he returned her to the Overland Police Station where her "incarceration continued." Thereupon, before denying the request to reopen the case, the court said, "Let the record show that there was considerable discussion between Court and counsel before we placed this on the record; * * *." The court in the meanwhile had read the depositions of the plaintiff and the defendant and because there was no mention of a trip back to the store declined to reopen the case.

 It may be that an invalid reason was given for denying the request, but it does not follow as a matter of course that plaintiff is therefore entitled to a new trial. When there is no inconvenience to the court or unfair advantage to one of the parties, there is an abuse of discretion and a new trial will be directed upon a refusal to reopen a case and permit the introduction of material evidence, that is evidence that would substantially affect the merits of the action and perhaps alter the court's decision. Smith v. Ray M. Dilschneider, Inc. (Mo.), 283 S.W.2d 631, 635–636. In connection with this rule and the merits of this action it may be noted that "In Missouri, evidence of the defendant's mere accompanying of the police in an investigation of the plaintiff's activities, while the plaintiff is detained for the purpose, *together with evidence of some active participation by the defendant in directing the investigation,* is enough to support a verdict for the plaintiff. For example, Thompson v. St. Louis-San Francisco R. Co. (Mo. App.), 3 S.W.2d 1033." Annotation 21 A.L.R.2d 1. c. 708. But here the only additional circumstance suggested by the offer of proof is the mere fact that Maury, accompanied by an officer, drove Rosalie back to the store and again an unsuccessful search was made for the sweaters. On this trip he did not accuse her of stealing the sweaters, and, as previously indicated, there is no evidence from which it is a fair inference that there was, in the language of the annotation, "participation by the defendant in directing the investigation." At most there was the furnishing of necessary and proper information and cooperation with the police. In these circumstances

there was no abuse of discretion in the court's refusal to reopen the case to hear the additionally proffered testimony. McClendon v. Johnson (Mo.), 337 S.W.2d 77, 83–84; Walton v. Van Camp (Mo.), 283 S.W.2d 493; Conley v. Dee (Mo.App.), 246 S.W.2d 385.

For the reasons indicated the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM: The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All of the Judges concur.