In the Matter of the ESTATE OF Jake M. VIVIANO, Deceased, Pauline M. Gilbers, Administratrix.

No. 43722.

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 22, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 16, 1981.

Application to Transfer Denied
Dec. 14, 1981.

Courtney Shands, Jr., Kohn, Shands, Elbert, Gianoulaki & Giljum, St. Louis, for appellant.

REINHARD, Judge.

The principal issue in this case is whether the probate court erred in determining under the evidence that Jake M. Viviano and Regina M. Viviano died simultaneously. The Administratrix of the Estate of Jake M. Viviano appealed. We affirm.

The statement of facts in appellant's brief states:

Jake M. Viviano and his wife, Regina M. Viviano, died on October 29, 1978 as a result of injuries received in an automobile accident. On November 13, 1978 separate estates were opened for each in the City of St. Louis. Believing Mrs. Viviano to have survived her husband, the Administratrix inventoried all jointly held property in the Estate of Regina M. Viviano.

On January 8, 1980, John W. Sherman, who had been injured in the accident which killed the Vivianos, filed a petition in both estates in which he alleged that the wife predeceased the husband or that they died simultaneously. He further alleged that most of their assets were to be distributed as part of her estate and that he had filed a civil action for damages against the husband's estate. He requested the court determine the order of their deaths.

The record before us reveals no responsive pleading to the petition. The record further reveals that the husband died intestate but reveals nothing concerning his wife's testacy.

The estate principally relied upon evidence given by Dr. Joseph C. Sapala, a pathologist. On November 2, 1978, he conducted autopsies on both bodies after they had been embalmed, but before they were buried.

The doctor found the husband, age 60, to have received a fractured dislocation of the cervical vertebrae, resulting in severance of the spinal cord, a fractured distal tibia and fibula, and fractured anterior ribs, right and left. Also, he received a lacerated left neck, cutting vital structures in the neck, a lacerated liver, spleen, right kidney and right ventricle. He concluded that his death was instantaneous and was secondary to the lacerations of the spinal cord.

He found the wife, age 55, to have received fractures of the distal tibia and fibula, bilateral dislocations of the femoral necks, bilateral fractures of the radius and ulnar, fractures of the anterior ribs and a laceration of the heart. He concluded that she died as a result of a crushing chest injury resulting in a lacerated left ventricle.

It was his opinion that the husband died first. On cross-examination, he said he could not state at what time either died nor could he state within a reasonable degree of medical certainty how long the wife survived.

The death certificates were offered in evidence by Sherman. They were signed by Stanley Meyer, Coroner of Franklin County. The husband's cause of death was listed as a skull fracture and crushed chest as a consequence of an automobile accident. The certificate stated the hour of injury to be 10:54 A.M. and that the interval between onset and death was immediate. The wife's cause of death was listed as a broken neck and multiple compound fractures as a consequence of an automobile accident. The certificate stated the hour of injury to be 10:54 A.M. and that the interval between onset and death was immediate.

Six members of emergency personnel who arrived at the scene shortly after the crash testified. Apparently, the impact of the crash threw the husband out of the car

as he was found lying on the highway. Deputy Sheriff Miller, who arrived at the scene even before the third vehicle involved in the collision had time to turn around and return, testified that the husband was dead at the time he arrived. Keith Bell, a member of the voluntary ambulance service, Oscar Armfield, a Missouri highway patrolman, and Tom Nuernberger, a paramedic with the Union Ambulance District all stated that the husband was dead at the time of their arrival.

The force of the collision crushed the wife. The upper portion of her body was pushed under the dash, while her legs were pushed under the front seat. In order to remove her from the car it was necessary to first cut off the passenger door with an air chisel. Deputy Sheriff Miller and Keith Bell found no evidence of breathing, movement or sound from her when they arrived. Bell took her pulse, but there was none. Kenneth Mundwiller, a member of the Union Volunteer Fire Department, Armfield and Nuernberger all, also agreed that she was dead when they arrived.

The Simultaneous Death Act, § 471.030, RSMo. 1978, provides:

> Where there is no sufficient evidence that two joint tenants or tenants by the entirety have died otherwise than simultaneously the property so held shall be distributed one-half as if one had survived and one-half as if the other had survived.... The term "joint tenants" includes owners of property held under circumstances which entitled one or more to the whole of the property on the death of the other or others.

■ Since there was evidence that the decedents died in a common disaster, survivorship will be deemed unascertainable if there is no evidence establishing that one of them outlived the other. In that event they will be deemed to have died in the same instant. However, the Act does not apply if there is any sufficient evidence one outlived the other. *Schmitt v. Pierce*, 344

S.W.2d 120 (Mo. banc 1961). Survival by "one second would be enough" to make the Act inapplicable. *Schmitt*, at 124.

The trial court found "sufficient evidence that Jake M. Viviano and Regina M. Viviano came to their deaths simultaneously."[1] The Supreme Court has construed the term "sufficient evidence" in Section 471.030, to mean "substantial evidence." *Schmitt* at 123.

The judgment of the trial court must be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976).

The estate claims that the court's order must be reversed because there is no substantial evidence to support it and because it is against the weight of the evidence. It further claims that the court misapplied the Simultaneous Death Act.

When as here, no findings of fact or conclusions of law are filed and none requested, all fact issues are deemed to be found in accordance with the results reached. The judgment is to be affirmed under any reasonable theory supported by the evidence. *DePaul Hospital School of Nursing, Inc. v. Southwestern Bell Telephone Company*, 539 S.W.2d 542, 545 (Mo. App. 1976). We are also required to accept as true the evidence and permissible inferences which may be drawn favorable to the prevailing party and to disregard contrary testimony. *Duley v. Leininger*, 527 S.W.2d 456, 458 (Mo.App. 1975).

■ Under the Simultaneous Death Act, the burden of proof falls upon the party whose claim is dependent upon survivorship. *In re Estate of Rowley*, 257 Cal. App.2d 324, 333, 65 Cal.Rptr. 139, 145 (1967); *In re DiBella's Estate*, 199 Misc. 847, 100 N.Y.S.2d 763, 765 (1950) *affd.* 107 N.Y.S.2d 929; *In re Cruson's Estate*, 189 Or. 537, 221 P.2d 892, 902 (1950). Here,

---

1. Although Sherman challenges the wording of the order as not within the statute, it is clear the trial court has found that "there is no sufficient evidence that [the] two ... have died otherwise than simultaneously," and we shall so treat the order.

even though Sherman filed the petition asking the court to determine the order of death, it was the estate's position that the wife survived the husband, and consequently, the burden of proof fell upon it to establish that fact.

■ In a court tried case, the court is sitting as the trier of the facts and has leave to disbelieve all of the testimony of any witness or to believe part of a witness' testimony and reject the rest. *Estate of Sheets v. Sheets,* 558 S.W.2d 291, 296 (Mo. App. 1977). Even if the evidence of a party having the burden of proof is uncontradicted, it still may not carry the burden of proof. *Estate of Sheets, supra.*

■ The only evidence adduced at the hearing supporting the estate's contention was the testimony of the pathologist that the wife survived the husband. The trial court evidently disbelieved this witness as it had a right to do. This leaves no evidence that one spouse survived the other bringing this case squarely within the confines of the Simultaneous Death Act. It appears that the trial court concluded under the evidence that both husband and wife were instantly killed at the moment of impact. The death certificates indicating simultaneous death, the severe nature of the collision, and the testimony of the emergency personnel who arrived at the scene shortly after the crash, constituted substantial evidence supporting the court's determination that the Vivianos died simultaneously.

The estate challenges the probative effect of the death certificates. It admits that a certificate of death is prima facie evidence of the facts stated therein, § 193.170 RSMo. 1978, but charges there are internal inconsistencies within the certificates and consequently they cannot support a judgment which relies upon them, citing *State Farm Mutual Automobile Insurance Co. v. Underwood,* 377 S.W.2d 459, 463 (Mo.banc 1964). While we have no quarrel with this general proposition of law, and acknowledge there are inconsistencies in the death certificates, there are no inconsistencies as to the times of death. Although the certificates do not constitute conclusive evidence, *Pfingsten v.*

*Franklin Life Insurance Co.,* 330 S.W.2d 806, 816 (Mo. 1959), along with the testimony and the circumstances of the collision mentioned above, they constitute substantial evidence supporting the judgment.

Finally, the estate contends the court erred and abused its discretion when it overruled its motion to reopen the case. Two days after the hearing ended, the estate filed a motion to reopen the case in which it alleged that Ernest J. Sjobolom, driver of the third car involved in the collision, had given a statement to the Administratrix. According to Sjobolom, he was the first person to reach the victims and was able to get a pulse from the wife after it was apparent the husband was dead. However, neither party called him to testify. "The Administratrix's reason for not calling him was two-fold: First, expense, second, the Administratrix believed, and still believes, the pathologist's testimony is dispositive of the issue of the order of the deaths."

■ The estate recognizes the established rule that the court's decision to allow a party to present further evidence after the evidence is closed is a matter of discretion and that the court should only be reversed upon a showing of abuse of that discretion. *Landau v. Laughren,* 357 S.W.2d 74, 82 (Mo. 1962). We recognize that ordinarily when there is no inconvenience to the court nor unfair advantage to one of the parties it would be an abuse of discretion upon the refusal to permit the introduction of material evidence which might substantially affect the merits of the case. *Pride v. Lamberg,* 366 S.W.2d 441 (Mo. 1963). We have examined the estate's complaint and conclude under the circumstances of this case that there was no abuse of discretion.

Judgment affirmed.

CRIST, P. J., and SNYDER, J., concur.