In re the MARRIAGE OF Olivia J. PARMENTER and Richard G. Parmenter.

Olivia J. Parmenter, Petitioner–Appellant,

v.

Richard G. Parmenter, Respondent–Respondent.

No. 24359.

Missouri Court of Appeals, Southern District, Division Two.

July 22, 2002.

Betty A. Pace, Springfield, for appellant.

Steven Privette, Willow Springs, and Kelly Michael Bosserman, Springfield, for respondent.

PHILLIP R. GARRISON, Presiding Judge.

Olivia J. Parmenter ("Wife") appeals a Judgment and Decree of Dissolution of Marriage terminating her nine-year marriage to Richard G. Parmenter ("Husband"). In its decree, the trial court awarded them joint legal custody of their daughter, B.O.P., who was then nine years old, it awarded primary physical custody to Husband, and it awarded Wife temporary custody at specified times. The trial court also ordered Wife to pay Husband $156 per month as child support.

On this appeal, Wife raises issues concerning the sufficiency of the trial court's findings relating to child custody; its order that she pay child support; and the awarding of primary physical custody of their child to Husband. We remand in part with directions.

As with other court-tried cases, we must affirm a decree in a dissolution case unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law or unless it erroneously applies the law. *Mehra v. Mehra*, 819 S.W.2d 351, 353 (Mo. banc 1991).[1] We are to defer to the trial court's determinations of credibility, viewing the evidence and permissible inferences therefrom in the light most favorable to the decree and disregarding all contrary evidence and inferences. *In re Marriage of Perkel*, 963 S.W.2d 445, 447 (Mo.App. S.D.1998). This is because credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe none, part, or all of the testimony of any witness. *Id.*

In her first point on appeal, Wife contends that the trial court failed to enter a detailed written parenting plan in violation of Sections 452.375.9 and 452.310.7.[2]

1. When *Mehra* was decided, the applicable standard of review was based on Supreme Court Rule 73.01(c). Essentially the same standard is now found in Rule 84.13(d), Missouri Rules of Civil Procedure (2002).

2. All references to statutes are to RSMo 2000, unless otherwise indicated.

Section 452.375.9 provides, *inter alia,* that "[a]ny judgment providing for custody shall include a specific written parenting plan setting forth the terms of such parenting plan arrangements specified in subsection 7 of section 452.310." Section 452.310.7 sets out the arrangements that must be covered in every parenting plan detailing custody, visitation, and residential time, as well as, the specific factors which must be included in detailing how the decision-making responsibilities will be shared by the parents.

The trial court did not adopt either of the parenting plans submitted by Husband or Wife. In its judgment, it ordered that the parties have joint legal custody; that Husband would have primary physical custody; and that Wife would have temporary custody at specified times. The judgment did not, however, provide for: (1) school holidays; (2) Mother's Day and Father's Day; (3) the times and places for transfer of B.O.P. between the parties in connection with the residential schedule; (4) a plan for sharing transportation duties associated with the residential schedule; (5) appropriate times for telephone access; (6) suggested procedures for notifying the other party when a party requests a temporary variation from the residential schedule; (7) any suggested restrictions or limitations on access to a party and the reasons such restrictions are requested. Likewise, with reference to legal custody, the judgment did not provide for how the decision-making rights and responsibilities would be shared concerning (1) extracurricular activities, including a method of determining which activities the child will participate in when those activities involve time during which each party is the custodian; (2) child care providers, including how such providers will be selected; (3) communication procedures including access to telephone numbers as appropriate; (4) a dispute resolution procedure for those matters on which the parties disagree or in interpreting the parenting plan; (5) how the expenses of the child, including child care, educational and extraordinary expenses as defined in the child support guidelines, will be paid including the specific matters referenced in Section 452.310.7(3)(a)-(f).

Because the judgment failed to contain all of the prerequisites for a parenting plan required by Sections 452.375.9 and 452.310.7, the case must be remanded to the trial court with directions to prepare a parenting plan in compliance with those statutory provisions. *Bridgeman v. Bridgeman,* 63 S.W.3d 686, 692 (Mo.App. E.D.2002); *Brandow v. Brandow,* 18 S.W.3d 584, 587, 589 (Mo.App. W.D.2000); *Hollins v. Hollins,* 13 S.W.3d 669, 674 (Mo.App. E.D.2000).

█ In her second point, Wife contends that the trial court erred in failing to make written findings, pursuant to Section 452.375.6, as to the relevant factors that caused the trial court to enter its custody order and as to why it was in the best interest of B.O.P. Section 452.375.6 provides that if the parties have not agreed to a custodial arrangement, or the court determines such arrangement is not in the best interest of the child, the court shall include a written finding in the judgment based on the public policy in subsection 4 of that statute and each of the factors listed in the subdivisions of subsection 2 of the statute "detailing the specific relevant factors that made a particular arrangement in the best interest of the child." Likewise, it provides that "[i]f a proposed custodial arrangement is rejected by the court, the court shall include a written finding in the judgment or order detailing the specific relevant factors resulting in the rejection of such arrangement."

In this case, both parties submitted proposed parenting plans, neither of which were adopted by the trial court. Instead, the trial court arrived at its own custody arrangements in the judgment, but failed to make the findings required by Section 452.375.6. Under such circumstances, the case must be remanded to the trial court to make the findings required by Section 452.375.6. *See Brandow,* 18 S.W.3d at 588.

■ Wife contends in her third point that the trial court erred because the judgment provided that Husband would have "primary physical custody" of B.O.P. "in that the present law is when a parent is awarded substantial time periods with a minor child, the parents share 'joint physical custody'; and RSMo. 452.375.5(1) and (2) state that the residence of one of the parents shall be designated as the address of the child for mailing and educational purposes which was not specified in the judgment."

Section 452.375.1(3) provides:

"Joint physical custody" means an order awarding each of the parents significant, but not necessarily equal, periods of time during which a child resides with or is under the care and supervision of each of the parents. Joint physical custody shall be shared by the parents in such a way as to assure the child of frequent, continuing and meaningful contact with both parents.

Wife argues, in this point, that she was effectively awarded significant periods of time during which B.O.P. is to reside with or be under her care and supervision, and that consequently, the statement in the judgment that Husband was awarded primary physical custody and that she was awarded temporary custody was in error. In supporting that conclusion, she points

to the fact that her "temporary custody" was on the second full weekend and the last full week of each month, all of the time during the summer school vacation except for the second full weekend and the last full week during that time, and that she and Husband are to alternate having B.O.P. on her birthday and on major holidays.

Wife's rights with reference to B.O.P. are essentially like that in *Nix v. Nix,* 862 S.W.2d 948, 950 (Mo.App. S.D.1993), where we said that based on Section 452.375.1 the court had actually awarded joint physical custody to the parents. *See also Tracy v. Tracy,* 961 S.W.2d 855, 859 (Mo.App. S.D. 1998); *Francka v. Francka,* 951 S.W.2d 685, 689 (Mo.App. S.D.1997); *Morton v. Stockdale,* 888 S.W.2d 362, 363 n. 1 (Mo. App. S.D.1994); *Rinehart v. Rinehart,* 877 S.W.2d 205, 207 (Mo.App. S.D.1994); *In re Marriage of Johnson,* 865 S.W.2d 412, 415 (Mo.App. S.D.1993); *Ibrahim v. Ibrahim,* 825 S.W.2d 391, 396 (Mo.App. S.D.1992). As pointed out by Wife, the characterization of the custody as joint physical custody versus visitation determines the standard under which motions to modify are determined. *Babbitt v. Babbitt,* 15 S.W.3d 787, 791 (Mo.App. S.D.2000); *Nichols v. Ralston,* 929 S.W.2d 302, 304 (Mo.App. S.D.1996). Based on these authorities, and the plain language of Section 452.375.1, the trial court's award of physical custody was actually an award of joint physical custody to Husband and Wife.[3] Consistent with this, on remand, the trial court should enter an amended decree designating the physical custody as joint, and, pursuant to Section 452.375.5(1), designating the residence of one of the parents as the address of the child for mailing and educational purposes.

---

**3.** We are bound by the language of Section 452.375.1(3) defining "Joint physical custo-

dy." Any change in that must come from the legislature.

In her fourth point, Wife contends that the trial court erred in ordering her to pay child support of $156 per month, "which is not provided for under the mandatory child support guidelines in that there was only one Form 14 entered as evidence showing that the correct amount of child support was $108.00; therefore, when the trial court ordered [Wife] to pay $156.00 per month as child support, it was required to prepare its own Form 14 and show the calculations which were used to enter the child support order."

Wife filed a Form 14 at trial demonstrating that the presumptive correct child support to be paid by her was $108. At the close of the evidence, Wife's attorney offered her Form 14, and Husband's attorney requested leave to submit his Form 14 which was apparently not then in existence or offered at that time. Again at the conclusion of the closing arguments, Husband's attorney asked the trial court, "[M]ay I submit a Form 14?" to which the trial court responded, "Please do." Husband's attorney apparently forwarded a Form 14 directly to the trial court six days after the trial by way of a letter dated December 4, 2000. The record indicates that the trial court had written counsel on December 1, 2000, but that letter does not appear in the record on appeal here. A letter from Wife's attorney to the trial court dated December 20, 2000 references the letter from the trial court to counsel on December 1, 2000, and also refers to a letter from Husband's attorney to the trial court dated December 8, which apparently included a proposed judgment. In the December 20 letter, Wife's attorney specifically objects to the proposed judgment. One of his objections related to the child support contained in the proposed judg-

ment because Wife's Form 14 had accurately portrayed the trial evidence on Husband's income, whereas Husband's Form 14 filed after trial did not do so. Accordingly, Wife's attorney made the argument to the trial court that Husband's Form 14 should not be followed because it was not supported by the evidence. The trial court, however, entered a judgment that accepted Husband's Form 14 and ordered Wife to pay Husband child support in the amount of $156 per month.[4]

Wife's argument on this point is based on the premise that the Form 14 submitted by Husband was not available for consideration by the trial court because it was not filed prior to the close of the evidence. Her argument proceeds that since there was no Form 14 that the trial court could have adopted showing the presumed correct child support of $156 as contained in the judgment, and the trial court obviously rejected the Form 14 filed by her, the trial court had the obligation to prepare its own Form 14. Mother requests that we reverse and remand the case on the issue of child support because of the trial court's failure to include its calculations showing how it arrived at the child support award. In support, she cites cases such as *In re Marriage of Garman,* 959 S.W.2d 482, 485 (Mo.App. S.D.1998). *Garman* relies on *Woolridge v. Woolridge,* 915 S.W.2d 372 (Mo.App. W.D.1996), for the proposition that if the trial court rejects a party's Form 14, and the other party does not file one, the trial court must make its own calculation of the presumed child support amount pursuant to Rule 88.01 and Form 14, and articulate on the record how it calculated its Form 14

**4.** The record is not clear when this judgment was entered. It recites that the child support was to be payable in advance beginning December 1, 2000, but the docket sheet shows that it was filed with the clerk's office on June 13, 2001, and the copy of the judgment in the legal file here shows a file stamp of the same date.

amount. 959 S.W.2d at 485. There, the appellate court reversed the child support award because the trial court apparently rejected the only Form 14 filed and did not make its own Form 14 calculations. *Id.*

The instant case does not present that same scenario however. Here, Wife filed a Form 14 that was not followed by the trial court. At the close of the case, Husband's attorney asked for leave to file a Form 14 and did so six days later. That Form 14 was adopted by the trial court and it ordered Wife to pay child support in accordance with its calculations. The request to file a Form 14 by Husband, and consideration of the one he filed, was without objection from Wife. In fact, Wife's attorney wrote the court arguing that Husband's Form 14 should not be followed because it was not supported by the evidence. He did not contend at that time that the Form 14 filed by Husband was not available for consideration by the court because it was not filed prior to the close of the evidence.

Appellate courts are merely courts of review for trial court errors, and there can be no review of a legal proposition which was not presented to or expressly decided by the trial court. *Ahlgren v. Colvin–Weber Realty & Inv. Co., Inc.,* 507 S.W.2d 686, 688 (Mo.App.1974). Likewise, a party may not present one theory in the trial court and, for the first time, on appeal espouse a different one. *Id.*

■ Additionally, we note that the trial court has the discretion to allow a party to present further evidence after the evidence is closed, and that such action should result in a reversal only for an abuse of that discretion. *Matter of Viviano's Estate,* 624 S.W.2d 130, 133 (Mo.App. E.D.1981).

It has been said that ordinarily when there is no inconvenience to the court or unfair advantage to one of the parties, it would be an abuse of discretion to refuse to permit the introduction of material evidence that might substantially affect the merits of the case. *Id.*

We do not find an abuse of discretion by the trial court in considering and adopting the Form 14 filed by Husband for the reason argued by Wife in this point. This point is denied.

■ In her fifth point relied on, Wife contends that the trial court erred in setting the amount of child support she is to pay because it failed to give her credit for another child in her physical custody as required by Rule 88.01 and Form 14. She argues that the evidence was clear that she had a child from another marriage in her custody, who was not a subject of these proceedings. She argues that this information was contained in the Form 14 she filed and would have resulted in child support owing from her of $108 rather than the $156 ordered by the court.

A review of the Form 14 filed by Wife, as well as the one filed by Husband, reveal that each gave Wife a credit on line 2a of $150 for court or administratively ordered child support being paid.[5] Neither, however, provided a credit for a support obligation of other children in her primary physical custody. Wife's assertion in her brief that her Form 14 contained such a credit on line 2c is not supported by the record before us. As pointed out by Husband, a party is not permitted to raise a point on appeal that was not raised in the trial court, and cannot request relief on appeal not sought in the trial court. *Bunt-*

---

5. Wife testified that she had a court ordered support obligation for a child born of another marriage.

*ing v. McDonnell Aircraft Corp.,* 522 S.W.2d 161, 168 (Mo. banc 1975).

■ There is an additional reason that we are unable to find error by the trial court as alleged by Wife. The evidence was conflicting about whether the child for which Wife claims she should have been allowed a credit on line 2c of Form 14 was actually in her physical custody at the time of trial. There was evidence that this child was physically at Wife's residence on various occasions, and Husband's attorney made a statement to the trial court that the child was "[Wife's] son that lives with her." Other evidence indicated that the child only spent weekends with Wife. It is less than clear that Wife actually had primary physical custody of the child for whom she seeks credit on her child support obligation. Under the circumstances demonstrated in this record, we are unable to convict the trial court of error as presented in this point. The point is, therefore, denied.

■ Wife's sixth point also relates to the amount of child support she was ordered to pay. She contends that the trial court erred in setting the amount because it did not give her credit for the time she was to have primary physical custody of B.O.P. during the summer months. The decree awarded primary physical custody of B.O.P. to Husband during the school year, with Wife to have temporary custody twice each month. It also provided that the custody arrangement would reverse during the summer school vacation. Accordingly, Wife calculates that she is to have physical custody of B.O.P. slightly more than 32% of the time, and that the child support award should have been low-

er because of the additional expenses she will incur during those periods.

In support, Wife notes that Section 452.340 provides that in setting the amount of child support, the trial court is to consider all relevant factors including the "child's physical and legal custody arrangements, including the amount of time the child spends with each parent and the reasonable expenses associated with the custody or visitation arrangements." She also cites cases such as *Wofford v. Wofford,* 991 S.W.2d 194 (Mo.App. W.D.1999); *Stewart v. Stewart,* 988 S.W.2d 622 (Mo. App. W.D.1999); *Patton v. Patton,* 973 S.W.2d 139 (Mo.App. W.D.1998); *Leone v. Leone,* 917 S.W.2d 608 (Mo.App. W.D. 1996); and *Morton,* 888 S.W.2d 362, in support of her argument that under circumstances where a parent has the physical custody of a child for substantial periods, the presumed correct child support owing by that parent should be reduced. Those cases were decided pursuant to an earlier version of Form 14.

The "Directions, Comments For Use And Examples For Completion Of Form 14," Missouri Rules of Civil Procedure ("Directions"), were amended in 1998. Included in those amendments were provisions for a percentage adjustment of the basic child support amount found through the Form 14 calculations based on the number of overnight periods the parent owing the child support would have with the child. Here, Wife argues that the decree provides that she is to have B.O.P. for a total of 118 days during the year (32% of the time), a calculation not contested by Husband.[6] According to the table found in the Directions to Line 11 of Form 14, overnight periods of 92 to 109 nights corresponding to 25% to 30% of the year

---

6. We assume, without calculating it, that this corresponds to the number of overnight periods Wife will have the child.

would result in an adjustment of 10% of the basic child support amount calculated on Line 5 of Form 14. The Directions also provide that the adjustment "may" be greater if the parent obligated to pay support has been awarded periods of overnight visitation or custody for more than 109 days per year.

In this case, both Form 14's filed with the trial court provided for a 10% adjustment to Wife for overnight visitation or custody. This included the Form 14 filed by Wife. Except for the fact that Husband's Form 14 allocated less income to himself than did Wife's, and therefore gave Wife a correspondingly less adjustment on Line 11, Wife received what she asked the trial court for. Her own Form 14 allocated a 10% adjustment on Line 11. This, together with the fact that the Directions relating to Line 11 of Form 14 provide that the adjustment "may" be greater than 10%, leads us to conclude that the trial court did not abuse its discretion in the manner espoused by Wife in this point. The point is denied.

▬ In her final point, Wife contends that the trial court erred in granting Husband primary physical custody of B.O.P. She argues that this decision was not in B.O.P.'s best interest because Husband and his family had attempted to alienate B.O.P. from Wife, and were not likely to encourage a good relationship between Wife and B.O.P. We construe this point as being primarily directed at the designation of Husband as having custody of B.O.P. a majority of the time.

Wife points to an interview of B.O.P. by the trial court in which B.O.P. indicated that Husband had told her that Wife had purchased alcohol, and that Wife did not like Husband because she "usually cheats on him." She also points to comments made by the trial court at the close of the evidence in which he noted Husband's ob-

vious bad feelings about Wife, and that it was obvious that Husband had "said some things about [Wife] that he shouldn't have said." The trial court also said, in addressing Husband, that B.O.P. had not had many good things to say about Wife, "and that's bad, from my point of view, and I think part of that is your fault and your family's fault, she's not that bad, okay?" Later, the trial court said that "I'm afraid that [Husband] won't be—will cause [Wife] trouble as far as relationship [sic] with his daughter and that bothers me," and "somebody's been telling her some bad things about her because she didn't know them firsthand, they had been told to her."

We are to view the evidence in the light most favorable to the decision of the trial court and will affirm the judgment under any reasonable theory supported by the evidence. *Kerr v. Louderback,* 35 S.W.3d 511, 513 (Mo.App. S.D.2001). "We give greater deference to the trial court in child custody cases than in other types of cases because the trial court is in the best position to judge the credibility of the parties, their sincerity, character, and other intangibles which may not be revealed by the record." *Id.* citing *Johnson v. Lewis,* 12 S.W.3d 379, 382 (Mo.App. W.D.2000).

In the instant case, while B.O.P. did indicate that Husband had discussed Wife with her, she also made it clear that she did not want to live with Wife because of Wife's use of alcohol and her behavior apparently induced by it. B.O.P. described episodes of Wife being belligerent and mean when drinking, Husband taking her into other rooms to get away from Wife, and how such behavior upset her. Other testimony demonstrated that Wife had occasionally consumed alcohol in the presence of B.O.P. to the extent that she would pass out. One of Wife's older daughters testified that when she was in high school, Wife would furnish beer that

the two of them would drink while driving around before she went to school. Additionally, the evidence demonstrated other examples of poor parenting decisions by Wife. For instance, Wife obtained false identification and took B.O.P. to a penitentiary to visit an inmate serving time for murder with whom Wife had developed a romantic relationship. The trial court also mentioned that Wife's trailer home seemed crowded with other people in that her two grandchildren (ages 6 years old and 7 months old) had been placed with her by the juvenile authorities, and her son by another marriage also sometimes stayed there.

We are to give due regard to the trial court's opportunity to judge the credibility of witnesses as the trial judge is in the best position to assess the parties' credibility, sincerity, character, and other intangibles that are not completely revealed by the record on appeal. *Kerr,* 35 S.W.3d at 513. Under these circumstances, we are unable to conclude that the trial court erred as argued by Wife. This point is denied.

The case is remanded to the trial court with directions to enter an amended judgment designating the award of physical custody as joint, to make written findings required by Section 452.375.6, and to make a complete parenting plan as required by Sections 452.375.9 and 452.310.7. In all other respects the judgment is affirmed.

PREWITT and PARRISH, JJ., concur.