Karen LaFEVERS, Plaintiff–Appellant,

v.

Pierre L. CLOTHIAUX, M.D., and
Ferrell–Duncan Clinic, Inc.,
Defendants–Respondents.

No. SD 31575.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 30, 2012.

Application for Transfer Denied
Jan. 29, 2013.

Deborah K. Dodge, Springfield, MO, for
Appellant.

Darynne L. O'Neal, Springfield, MO, for
Respondent.

DON E. BURRELL, J.

Karen LaFevers ("Plaintiff") brought a medical negligence action against Pierre L. Clothiaux, M.D., and Ferrell–Duncan Clinic, Inc. ("Defendants") which claimed Plaintiff was damaged by Dr. Clothiaux's negligent performance of a surgical procedure on her knee. The case was tried to a jury, which returned a verdict in favor of Defendants. The trial court then entered judgment in accordance with the jury's verdict. In two points relied on, Plaintiff claims the judgment must be reversed and a new trial granted because the trial court committed prejudicial error by: 1) refusing to allow her to reopen her evidence to present deposition testimony and/or interrogatory answers from Defendants' retained expert; and 2) overruling her objection to Dr. Clothiaux being allowed to testify about what she claimed constituted a "new or different opinion" that had not previously been disclosed.

Finding Plaintiff's first point both meritorious and dispositive, we reverse the judgment and remand the case for a new trial.

## Applicable Principles of Review

We review a trial court's decision on a request to reopen evidence for abuse of discretion. *See In re Marriage of Parmenter,* 81 S.W.3d 234, 240 (Mo.App. S.D. 2002); *In re Estate of Viviano,* 624 S.W.2d 130, 133 (Mo.App. E.D.1981).

> We recognize that ordinarily when there is no inconvenience to the court nor unfair advantage to one of the parties it would be an abuse of discretion upon the refusal to permit the introduction of material evidence which might substantially affect the merits of the case.

*Viviano,* 624 S.W.2d at 133 (citing *Pride v. Lamberg,* 366 S.W.2d 441 (Mo. banc 1963)); *see also In re Estate of Mapes,* 738 S.W.2d 853, 856 (Mo. banc 1987) (remanding for new trial where the trial court refused to reopen the case so that a party could present "clearly material and possibly outcome determinative" evidence).

## Background

Dr. Clothiaux first examined Plaintiff on December 11, 2006. On that occasion, Plaintiff complained of a "catching" sensation and pain in her left knee. She also indicated that her knee had been "popping, grinding, and bothering [her] for a long time[.]" Plaintiff said she had been using medication and a knee brace to help ease her pain, but those treatments were not working. Dr. Clothiaux reviewed an MRI of Plaintiff's knee, which showed swelling around the knee. He also performed other tests designed to check for mechanical problems and range of motion. The tests did not indicate that Plaintiff's knee was unstable, but they did elicit pain in and behind her knee.

Next, Dr. Clothiaux testified that he discussed both surgical and non-surgical treatment options with Plaintiff. Plaintiff testified that Dr. Clothiaux recommended a diagnostic arthroscopic procedure and did not offer physical therapy as a treatment option. Dr. Clothiaux said he did not discuss surgical treatment options to stabilize the kneecap because, based upon his evaluation, "[he] had not anticipated finding an issue with the kneecap." Plaintiff elected to undergo the arthroscopic surgery recommended by Dr. Clothiaux.

Dr. Clothiaux performed the arthroscopic procedure on Plaintiff's left knee on December 20, 2006. During the surgery, Dr. Clothiaux initially determined Plaintiff's knee to be hypermobile, meaning "the kneecap just ha[d] excessive movement." He also observed that all surfaces were normal and that there was no evidence of wear and tear in the knee. Dr. Clothiaux then examined the plica, "a band of synovi-

um . . . along the anterior medial aspect of the knee." Because he believed the plica could have been causing the "catching" in Plaintiff's knee, Dr. Clothiaux removed it. After removing the plica, Dr. Clothiaux determined that Plaintiff's knee cap had shifted laterally. Without the plica to act as a tether, the observed hypermobility increased to subluxation, a condition causing "the patella [to go] out of it's [sic] normal tracking alignment." At that point, Dr. Clothiaux decided to stabilize the knee cap by performing thermal shrinkage. Dr. Clothiaux testified that he performed the least invasive method of thermal shrinkage, called "gridding," which involved shrinking the tissue with a thermal probe in the form of a grid. After performing the shrinkage, Dr. Clothiaux reported that the knee cap was centered again.

Plaintiff testified that Dr. Clothiaux explained the procedures to her after surgery. She maintained that she "didn't know [she] had any issues with [her] kneecaps" prior to surgery. Dr. Clothiaux reexamined Plaintiff post-operatively on January 11, 2007. At that time, Plaintiff was still experiencing pain in her knee. Dr. Clothiaux ordered physical therapy for Plaintiff. Plaintiff later contacted Dr. Clothiaux because she felt she was making little progress in therapy. During Plaintiff's next visit with Dr. Clothiaux, on March 1, 2007, he referred her to a neurologist because Dr. Clothiaux was concerned that she was developing a femoral neuropathy that was contributing to a loss of function in her knee. Dr. Jon Roberts, Plaintiff's family physician, also ordered an MRI to evaluate the cause of Plaintiff's knee pain. This MRI revealed "damage occurring to the patellofemoral joint where there wasn't before [the arthroscopic procedure]." During her last visit with Dr. Clothiaux, on April 5, 2007, Plaintiff was still experiencing pain and immobility in her knee.

Plaintiff then sought treatment from Dr. Richard Lehman on May 17, 2007. Dr. Lehman noted that "[Plaintiff's] mechanics are quite poor," and "[h]er patella really does not move at all." Under Dr. Lehman's care, Plaintiff received multiple procedures to remove scar tissue from her knee and underwent various therapy and treatments to ease the pain and stiffness she was experiencing. Plaintiff was also examined and treated by other doctors for neurological causes of her pain and to ease other symptoms she began experiencing after the arthroscopic surgery by Dr. Clothiaux. Plaintiff testified that she continues to suffer from chronic pain in her entire left leg.

In preparation for trial, Defendants retained Dr. Matthew Matava, a specialist in orthopedic surgery and sports medicine, as an expert witness to address the standard of care. During his deposition, taken on April 6, 2011, Dr. Matava testified to the procedure for evaluating patients with symptoms similar to Plaintiff's. Dr. Matava indicated that surgery is not necessary in all patients with subluxation, and he would recommend someone with mild subluxation undergo conservative treatment first. He testified that the plica would typically be moved or flexed to allow for visualization, and it would be removed if there was evidence of excessive wear or contact against the plica. In his experience, he has never seen plica removal cause patellar instability. He ultimately concluded that Dr. Clothiaux did not breach the standard of care, but he also indicated that he does not perform thermal shrinkage because it "[d]oesn't work."

Prior to and during the course of trial, counsel for both parties had what Plaintiff terms a "gentleman's agreement," under which "both parties agreed to disclose the

witnesses they intended to call each day as a courtesy to the other." Defendants' counsel maintained throughout the course of the trial that she intended to call Dr. Matava as a witness. Based on that expressed intention, Plaintiff's counsel referred to Dr. Matava as a witness in both *voir dire* and opening statement. Prior to resting her case in chief, Plaintiff's counsel again asked and defense counsel again represented that "it was her intention to call Dr. Matava." Based on defense counsel's statement that she intended to call Dr. Matava as a witness in her case, Plaintiff rested her case.

After Plaintiff rested, Defendants opened their case with testimony from Dr. Clothiaux. Dr. Clothiaux's testimony continued throughout the day. Within an hour after leaving court for the day, defense counsel sent Plaintiff's counsel an email indicating that her client had decided not to call Dr. Matava as a witness. The email also addressed Plaintiff's concern that Dr. Matava's name had been mentioned to the jury in Plaintiff's opening statement, stating, "I bet, though, that the jury has forgotten about that by now," and promising not to reference or attack the fact that Plaintiff had not presented Dr. Matava's testimony. Later that evening, Plaintiff provided defense counsel with proposed deposition offers via email.

The next morning, Plaintiff filed a motion to reopen her evidence to present Dr. Matava's testimony via designated portions of his deposition. After hearing arguments on the request, the trial court denied Plaintiff's request as follows:

THE COURT: We all done? I'm not going to do this. I don't think—I don't do business that way, so. Next? You [Plaintiff's counsel] need to make a further record?

[Plaintiffs Counsel]: Yes, I do. Your Honor, if I could have—I need to make an exhibit, I guess.

THE COURT: Offer of proof of the marked up depo would be good.

[Plaintiffs Counsel]: Correct. Do unto others.

THE COURT: Call it XX, Plaintiff's Exhibit XX is marked up offer of proof of what was intended to be read to the jury. I suppose you want to prepare an offer of proof of what you would have done had I done that? I don't know.

[Plaintiff's Counsel]: Well, Judge, can we at least read their answers to interrogatories based upon [a published case provided to the trial court by Plaintiff's counsel supporting her request to reopen]?

THE COURT: You're not reopening your case, period, and I'm done. Now are you going to proceed?

[Defendants' Counsel]: Yes, Judge

THE COURT: Bring the jury in. I say you're not. In rebuttal if something new comes up, I certainly will not preclude anything in proper rebuttal.

The trial continued without any evidence from Dr. Matava, and the jury ultimately returned its verdict in favor of Defendants. Nine of the twelve jurors signed the verdict form. After the trial court denied Plaintiff's motion for new trial, this appeal timely followed.

## Analysis

### Point I—Court Abused its Discretion in Denying Motion to Reopen Evidence

Plaintiff's first point claims:

The trial court erred in denying Plaintiff her request to reopen her case so as to read portions of Dr. Matthew Matava's deposition and/or reading Defen-

dants' answers to interrogatories disclosing Dr. Matava was Defendant's [sic] retained expert witness because such evidence would not be an inconvenience to the court or unfair to Defendants and said testimony and disclosure of Dr. Matava may have affected the merits of the case in that there was ample time to present the evidence, Defendants would have been permitted to submit counter-designations and the jury would have been able to weigh the differing opinions of Dr. Matava as compared to those opinions [of Dr. Clothiaux] and/or clarify Dr. Matava's role in the case.

### Alleged Error Appropriately Pre served for Review

█ As a preliminary matter, Defendants argue that Plaintiff's claim has not been properly preserved for our review because she failed to make a sufficient offer of proof at trial. Defendants correctly note that "appellate courts will not review a claim that evidence was erroneously excluded unless the party seeking to present it makes a specific and definite offer of proof." *Choate v. Natvig*, 952 S.W.2d 730, 733 (Mo.App. S.D.1997) (quoting *Woodiel v. Barclay Enters., Inc.*, 858 S.W.2d 247, 250 (Mo.App. S.D.1993)).

Here, Plaintiff did make the requisite "specific and definite offer of proof" by offering Dr. Matava's designated deposition testimony as suggested by the trial court during the bench conference on Plaintiff's motion to reopen. Following the court's instruction, Plaintiff submitted as "Exhibit XX" a "marked[-]up" copy of the entirety of Dr. Matava's deposition to the court as an offer of proof.[1]

Contrary to Defendants' claim, Exhibit XX, Dr. Matava's deposition testimony in its entirety, was properly before the trial court and was properly included in Plaintiff's Supplemental Legal File. Plaintiff provided the affidavit of Rachelle Sobaski, the court reporter during the underlying trial, which attests that Exhibit XX was unintentionally omitted from the transcript index. Ms. Sobaski also provided a corrected index, which clearly identifies Exhibit XX as being offered during the above-referenced exchange between counsel and the court.

Plaintiff additionally provided the affidavit of Steve Helms, Clerk of the Circuit Court of Greene County, which attests that a copy of "Exhibit XX" is on file with his office and is certified as having been delivered to opposing counsel at 8:34 p.m. on May 4, 2011, and again on May 5, 2011. These affidavits convince us that Exhibit XX, Dr. Matava's deposition testimony in its entirety, was presented to the trial court on May 5, 2011. It was labeled as Exhibit XX, it was made a part of the trial court's file, and it is therefore properly before this court as a part of Plaintiff's Supplemental Legal File under Rule 81.12.[2] Defendants' motion to strike Exhibit XX is denied.

█ The purpose of an offer of proof is twofold: 1) to educate the trial judge on the admissibility of the evidence with the hope that he or she will reconsider; and 2) to preserve the issue for appellate review. *State ex rel. Praxair, Inc. v. Missouri Pub. Serv. Comm'n*, 344 S.W.3d 178, 185 (Mo. banc 2011); *Wilkerson v. Prelutsky*,

---

1. Under Rule 57.07(a), "[a]ny part of a deposition that is admissible under the rules of evidence applied as though the deponent were testifying in court may be used against any party who was present or represented at the taking of the deposition or who had proper notice thereof. Depositions may be used in court for any purpose."

2. All Rule references are to Missouri Court Rules (2012).

943 S.W.2d 643, 646 (Mo. banc 1997) (suggesting that the latter is the primary purpose, to assist the appellate court in "understand[ing] the scope and effect of the question and proposed answer in considering whether the judge's ruling sustaining an objection was proper"). In this case, Plaintiff's offer of proof—a "marked[-]up" copy of Dr. Matava's deposition testimony—served both of these purposes. The evidence Plaintiff sought to present is before us in the form of sworn answers to specific questions, and it is clear from the transcript that the trial judge had reviewed the proposed testimony. Defendants' claim that the excluded evidence was not properly preserved for appellate review fails.

### Materiality of the Excluded Evidence

■ Plaintiff claims that allowing her to reopen her case would not have inconvenienced the court or unfairly disadvantaged Defendants because there were two days left in the trial week at the time the trial court refused to allow Plaintiff to reopen her evidence, Defendants rested their case an hour later, and Defendants would have been allowed to introduce the portions of Dr. Matava's deposition they believed were favorable to their case.[3] Nothing in the trial court's refusal to allow Plaintiff to reopen her evidence indicated that the decision was based on any perceived inconvenience to the court or disadvantage to

Defendants. Rather, the trial court simply indicated, "I don't do business that way."

It may be argued that a trial court's discretion to reopen evidence is broader than its discretion to refuse to do so because, generally, "[a] litigant should not be precluded from offering additional evidence simply because counsel has rested his case." *Conley v. Dee,* 246 S.W.2d 385, 387 (Mo.App. St.L.D.1952). *Pride* and its progeny have repeatedly stated the principle that if the court is not inconvenienced and there is no unfair advantage, then it is an abuse of discretion to refuse to reopen to receive evidence that is material and possibly outcome determinative. *See, e.g., Mapes,* 738 S.W.2d at 855; *Pride,* 366 S.W.2d at 445; *Anderson v. Mantel,* 49 S.W.3d 760, 765 (Mo.App. S.D.2001); *Viviano,* 624 S.W.2d at 133; *Moss v. Greyhound Lines, Inc.,* 607 S.W.2d 192, 195–96 (Mo.App. E.D.1980).

Here, the excluded deposition testimony was material and could have altered the jury's decision because it tended to contradict portions of both Dr. Clothiaux's actions and testimony. Dr. Matava testified that the standard of care is not to remove the plica to visualize the patella, like Dr. Clothiaux did, but rather to flex or move it. He also testified that removing the plica would be appropriate if there was evidence of excessive wear, but he found no evidence of such wear in Plaintiff's knee.

---

**3.** Plaintiff also relies heavily on two cases, *Adams by Ridgell v. Children's Mercy Hosp.,* 848 S.W.2d 535 (Mo.App. W.D.1993), and *Porter v. Toys 'R' Us–Delaware, Inc.,* 152 S.W.3d 310 (Mo.App. W.D.2004), as support for her claim that the trial court abused its discretion in denying her motion to reopen. Although these cases, particularly *Adams,* present factually similar circumstances, they held that the trial court did not abuse its discretion by *admitting* the evidence at issue; they do not control the question in the instant case—whether it was an abuse of discretion to *exclude* the proffered evidence. In *Adams,* the defendant appealed the trial court's decision to allow the plaintiff to reopen evidence and present deposition testimony where the defendant had represented it would call an expert witness and then decided not to do so. 848 S.W.2d at 543. Similarly in *Porter,* the defendant alleged that the trial court had abused its discretion in allowing the plaintiff to read interrogatory answers to the jury identifying an expert witness that the plaintiff had mentioned in *voir dire* and its opening statement. 152 S.W.3d at 317–18.

Dr. Clothiaux testified that after removing the plica, Plaintiff's knee began subluxating. Dr. Matava testified that he had never seen such an increase in hypermobility after removing the plica. Dr. Matava also testified that he does not perform thermal shrinkage, because in his experience, it "[d]oesn't work." And although Dr. Matava's ultimate opinion was that Dr. Clothiaux did not breach the standard of care in his treatment of Plaintiff (a fact Defendants could present to the jury by reading that portion of Dr. Matava's deposition), his criticisms of certain actions taken by Dr. Clothiaux constituted "material evidence which might substantially affect the merits of the case[.]" *Missouri Highway & Transp. Comm'n v. Rockhill Dev. Corp.*, 865 S.W.2d 765, 770 (Mo.App. W.D. 1993).

Plaintiff would have achieved no unfair advantage by reopening her case to present Dr. Matava's deposition testimony as Defendants would have been able to use the portions of that deposition that they deemed favorable to them. Rule 57.07(a); *Carlyle v. Lai*, 783 S.W.2d 925, 927 (Mo. App. W.D.1989) ("It is the general rule that when one party reads a portion of a deposition the opposing party may read some or all of the remainder in explanation"). In addition, Plaintiff's failure to offer the deposition testimony during her case in chief was not the result of any oversight or inadvertence on the part of her counsel; it occurred only because Plaintiff relied on a representation by defense counsel that Plaintiff would have an opportunity to adduce live evidence from Dr. Matava when he was called as a witness by Defendants. In opposing Plaintiff's error claim, defense counsel does not deny that she made such a representation to opposing counsel. Her argument is that Defendants had an absolute right to change their trial strategy. While that assertion is true, it misses the point.

Defendants' right to change their trial strategy and either call or not call any particular witness is not in doubt; the relevant issue is whether Plaintiff should have been penalized for relying in good faith on a representation made by opposing counsel. Such "gentlemen's agreements" are to be encouraged as an essential part of both professional collegiality and the efficient administration of justice. And the matter could have been easily fixed without the necessity of a retrial if defense counsel had supported (or at least not opposed) Plaintiff's request to reopen the evidence to do what she would have done but for defense counsel's representation.

Plaintiff's request to reopen her evidence to introduce portions of Dr. Matava's deposition would not have inconvenienced the court or given Plaintiff an unfair advantage, and the excluded material evidence might have substantially affected the merits of the case. As a result, the trial court abused its discretion in denying Plaintiff's motion to reopen. *Cf. Mapes*, 738 S.W.2d at 856; *Arrow Fin. Servs., LLC v. Collier*, 323 S.W.3d 827, 829 (Mo.App. E.D.2010); *Moss*, 607 S.W.2d at 195–96. Point I is granted.[4]

4. Plaintiff's second point claims she was unfairly surprised when Dr. Clothiaux testified without proper notice to a "new or different" opinion. Because the referenced opinion is now known to Plaintiff, and because the only relief requested in connection with Point II was a new trial—relief we are granting in response to Plaintiff's first claim of error—Point II is moot. We also do not address Plaintiff's alternative Point I claim that she should have been allowed to introduce Defendants' interrogatory answers relating to Dr. Matava for the same reason.

The judgment is reversed, and the case is remanded for a new trial.

DANIEL E. SCOTT, P.J., and JEFFREY W. BATES, J., concur.